1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

OAKIWEAR OUTDOOR LLC, a
Washington limited liability company,

              Plaintiff,

     v.

TIMBEE LLC, a Washington limited
liability company; BENJAMIN BREWER
and MAURA BREWER, husband and wife,
and the marital community comprised
thereof; and, JULIE ZIMMERMAN,
individually,

              Defendants.

Case No. 3:17-cv-5202

**COMPLAINT**

1.  MISAPPROPRIATION OF
     TRADE SECRETS UNDER 18
     U.S.C. § 1836

2.  VIOLATION OF TRADE
     SECRETS UNDER
     WASHINGTON TRADE
     SECRETS ACT

3.  BREACH OF FIDUCIARY DUTY
     AND DUTY OF LOYALTY

4.  TORTIOUS INTERFERENCE
     WITH BUSINESS
     EXPECTANCY

5.  CONVERSION

6.  CIVIL CONSPIRACY

**[JURY TRIAL REQUESTED]**



Plaintiff, Oakiwear Outdoor LLC ("Oakiwear" or "Plaintiff"), by and through its undersigned attorneys, for its complaint against Defendants Timbee LLC ("Timbee"), Benjamin Brewer and Maura Brewer ("Brewer"), and Julie Zimmerman, ("Zimmerman") alleges as follows:

## NATURE OF THE ACTION

1.     This action is brought to remedy: (1) Brewer and Zimmerman's disloyal and unlawful conduct in: taking, retaining, and misappropriating Oakiwear's property, including Oakiwear's confidential, proprietary, and trade secret information; working, while employed by Oakiwear, to create a competitor of Oakiwear (Timbee); attempting, while employed by Oakiwear, to divert customers to Timbee; misappropriating Oakiwear's property and confidential information, both prior to and after Brewer's and Zimmerman's abrupt resignations from Oakiwear; breaching their legal and equitable duties with Oakiwear; and, (2) Timbee's knowing, intentional involvement, and profits from these actions.

2.     Defendant Brewer is the former general manager of Oakiwear. He had responsibility for day-to-day operations, including hiring and firing employees, making strategic decisions, overseeing market research and sales data, and helping develop new lines for Oakiwear. His duties also included increasing and promoting the Company's good will with existing and prospective customers.

3.     Defendant Zimmerman was a senior sales representative, and her duties included servicing, soliciting, and selling to the customers and prospective customers assigned to her by Oakiwear.

4.     Unbeknownst to Oakiwear, while Brewer and Zimmerman were employed by Oakiwear, and supposedly doing their jobs, Brewer and Zimmerman secretly – and in violation of their legal and equitable contractual obligations to Oakiwear – actively and deceptively misappropriated Oakiwear's property and its

COMPLAINT - 2
Case No. 3:17-cv-5202
OAKW01-000001- 2050533.doc



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

confidential and proprietary documents and information, including its trade secrets, and used this information to create a competing company that occupies the exact same area in the marketplace: children's rain boots.

5.      Zimmerman officially resigned from Oakiwear on December 8, 2016.

6.      Brewer officially resigned from Oakiwear on February 21, 2017. Prior to their departures, Brewer and Zimmerman surreptitiously downloaded large amounts of Oakiwear's password protected, confidential data and information in order to facilitate sales by Timbee to Oakiwear's customers. The data and analysis Brewer copied and took included Oakiwear's trade secret materials – including extensive, confidential analytical material, data, and records generated by Oakiwear concerning its customer base. Brewer and Zimmerman attempted to conceal their misappropriation by deleting and destroying numerous emails and other materials.

7.      Oakiwear brings this action for: (1) misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; (2) violation under Washington's uniform trade secrets act, RCW 19.108; (3) breach of fiduciary duty and duty of loyalty; (4) tortious interference with business expectancy; (5) conversion; and (6) civil conspiracy.

## THE PARTIES

8.      Plaintiff Oakiwear is a limited liability company, organized and existing under the laws of the State of Washington, with its principal place of business in Vancouver, WA. Oakiwear is engaged in the business of marketing, distributing, and selling rain boots, umbrellas, rain jackets, and other outerwear. Kids' rain boots are its best-selling product. David Dustin ("Dustin") is the sole owner of Oakiwear. Dustin purchased Oakiwear in early 2014.

9.      Defendant Timbee is a limited liability company, organized and existing under the laws of the State of Washington, with its principal place of business in



Vancouver, Washington. Timbee was registered with the Washington Secretary of State on August 10, 2016. Defendant Timbee was formed by Brewer and Zimmerman to be a competitor of Oakiwear. Defendant Brewer is listed as a manager of Timbee.

10.     Defendants Benjamin Brewer and Maura Brewer are a married couple, residing, on information and belief, at 1716 NE 156th St., Vancouver, WA 98686. From 2014 until February 2017, Defendant Benjamin Brewer was an employee of Oakiwear.

11.     Defendant Julie Zimmerman is an individual, residing, on information and belief, in Atlanta, Georgia. From early 2016 until December 8, 2016, Defendant Zimmerman was an employee of Oakiwear.

## JURISDICTION

12.     This Court has original jurisdiction of this action pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the other claims asserted herein pursuant to 28 U.S.C. § 1367.

## ALLEGATIONS APPLICABLE TO ALL CLAIMS

13.     Oakiwear hired Defendant Brewer as a general manager ("GM") with Oakiwear in 2014 to run the day-today operations. Brewer worked for Oakiwear under its previous ownership in marketing, so he was familiar with the company prior to Dustin's purchase of it. Oakiwear re-hired Brewer as the general manager with the idea that he would live locally and oversee the day-to-day operations of the company. Brewer is identified as the manager of the company on annual reports filed with the Secretary of State.

14.     Brewer was responsible for hiring, firing, training, and supervising Oakiwear's employees. Brewer was also responsible for market and sales data, product development, Oakiwear's customer and contacts lists, development and maintenance of

L A N D E R H O L M
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

relationships with manufacturers and others in the sourcing process, trade secrets, and confidential and protected information.

15.     While an employee and manager of Oakiwear, Brewer was obligated by law to devote his full and utmost loyalty and good faith to Oakiwear, and was prohibited from engaging in any actions or conduct in violation of these duties, or which competed with, or tended to harm Oakiwear, and/or which would assist or further the interests of a competitor.

16.     Brewer was required to devote his full loyalty and utmost fidelity to Oakiwear during his employment, and restricted from stealing Oakiwear's property, misappropriating Oakiwear's trade secrets, confidential information and other property, from aiding Oakiwear's competitors, and from soliciting customers for Oakiwear's competitors while he was employed by and acting as a manager of Oakiwear.

17.     Oakiwear paid Brewer a base salary plus incentives. His base salary started at approximately $53,000. Oakiwear raised his salary to approximately $72,000 per year shortly before Brewer left Oakiwear. He was eligible for incentives in the amount of 5% of profits until December 2016, after which Brewer was eligible for monthly incentives of up to $1,000 beginning in January 2017.

18.     At the outset, Dustin instructed Brewer to have employees enter into employment agreements with non-competition and confidentiality covenants. Brewer never took those steps.

19.     Zimmerman was hired in early 2016 as Oakiwear's sales representative. Zimmerman was expected to regularly engage with existing clients, potential clients, and other potential leads, and increase Oakiwear's sales through wholesale accounts. She was tasked with attending trade shows and promoting the Oakiwear brand. Zimmerman was privy to Oakiwear's sales data, its confidential pricing lists, and its largest customers.



LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

I.      **Oakiwear's Confidential, Proprietary, and Trade Secret Information**

   A.      **Oakiwear's Business and Product Design**

   20.     Oakiwear's product catalog includes rain boots, umbrellas, waders, and rain jackets for kids and adults. Kids' rain boots are Oakiwear's best-selling product. One of Oakiwear's primary sales channels is wholesale accounts (retail storefronts) throughout the United States and Canada, with a heavier focus on areas with wetter climates. Wholesale accounts are one of the top three sales channels for Oakiwear. Oakiwear spent considerable time and resources developing contacts with the individual retail stores and building its sales channels.

   21.     Oakiwear also sells through online retailers by way of e-commerce websites like Amazon and EBay and daily discount sites such as Zulilly.com, Jane.com, and others. Oakiwear again spent considerable time and resources to establish relationships with each online retailer.

   22.     Oakiwear also has direct sales through its website, found at www.oakiwear.com.

   23.     Oakiwear's products are designed in-house by its employees. The process involves conducting extensive market surveys to identify patterns and products that are well received by consumers. Oakiwear maintains a confidential e-mail distribution list and distributes its surveys via email and through its social media sites.

   24.     Once the surveys are completed, the results are compiled and patterns are identified to create a list of potential patterns to add to the Oakiwear product line. Oakiwear then selects other elements of the pattern, such as borders around the pattern, and then the designs are completed.

   25.     The designs were then presented to Brewer and Dustin for discussion on whether to proceed with that design by ordering manufacturer samples. Once the samples are received and evaluated, a decision is made on whether to add that particular

LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

pattern to the Oakiwear product line. The entire process may take several months, depending upon the design and decision-making process.

26.     Oakiwear relies upon outside vendors to manufacture its product. Oakiwear spent considerable time and expense to find a manufacturer that could meet its quality and consistency requirements at a reasonable cost and in a timely fashion. These relationships are critical to Oakiwear's business and took significant effort to locate and cultivate. Oakiwear also has similar relationships with logistics companies for shipping and importing its products into the United States.

27.     Oakiwear has increased its inventory levels to roughly $800,000 - $1,000,000. Sales have consistently increased since Dustin purchased Oakiwear in 2014, and since his purchase, he has injected significant sums of working capital to increase inventory and equipment.

**B.     Oakiwear's Trade Secrets and Confidential Information**

28.     As General Manager and Sales Representative, Brewer and Zimmerman, respectively, had access to substantial confidential and proprietary Oakiwear information related to Oakiwear's current and prospective customers, products, margins, profit percentages and markets, the products customers purchased, and the terms on which Oakiwear dealt with those customers. As part of doing business, Oakiwear generates, develops, compiles, and analyzes, substantial information concerning each customer, including their product preferences, buying patterns, credit profiles, customer invoices and pricing, customer practices, margins and profit variances, and the exact amount and type of business transactions with each customer. Oakiwear generates, develops, complies, and analyzes similar information concerning each prospective customer. Oakiwear spends substantial amounts of money in obtaining, compiling, developing, and analyzing this data and information, and then making it available, together with extensive analysis, for use by its sales force.

LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

29.     The data generated, compiled, analyzed, and maintained by Oakiwear was provided to Brewer and Zimmerman. This includes the Company's confidential data and analysis on gross profit by product and by customer, gross profit percentages, gross profit variance, historical invoice, product and payment data, credit information, customer purchasing trends, specific product preferences and pricing of individual customers as well as of the customer base, potential discounted pricing and sales plans, current, historical, and projected volumes, costs, and other related data. The data provides insights on how Oakiwear does business, and provides data analytics of sales to every customer and of every product sold. The information maintained on prospective customers or "sales leads" is important to Oakiwear's continued growth and increasing its market share.

30.     For example, consumer preferences in patterns change from season-to-season. Oakiwear places significant value on its market research, as it allows Oakiwear to plan ahead for future seasons and be prepared to ensure products are ready to hit the market at the right time. Understanding which patterns and products are selling well allows Oakiwear to ensure it has sufficient inventory on hand to fill orders and assess which patterns to launch in the future. Patterns with the highest reviews on e-commerce sites may not be the current best sellers, as the pattern could have been on the market for a longer period, and thus accumulated more reviews.

31.     The extensive data and analysis to which Brewer and Zimmerman had access is confidential Oakiwear data and information, not available to competitors and others and constitutes Oakiwear's trade secrets. This information is available to the Company's employees only by virtue of their position and employment with the Company. Using this Oakiwear data, sales representatives can isolate markets, customers, specialties, prices, margins, gross profit percentages, product sales, and other key data to gain a competitive advantage related to individual customers, product



categories, pricing and products. This data and information, which is developed and analyzed by the Company at substantial cost, has significant economic value to the Company by virtue of not being available to competitors or the public.

32.    All of the data, information, and property to which Brewer and Zimmerman had access as employees of Oakiwear, including both trade secret material, and other property and information, was the property of Oakiwear, and Brewer and Zimmerman were authorized to use it only in the good faith performance of their duties on behalf of Oakiwear.

**C.    Reasonable Measures Taken to Protect Oakiwear's Confidential Information**

33.    The data and information provided to employees includes confidential and proprietary Oakiwear information; including Oakiwear's trade secrets. This data and information is available to the employees only by virtue of their employment with Oakiwear and their specific job duties. This data and information is to be used solely to further Oakiwear's business, customer sales, and good will. A competitor, who has access to this data and analysis, would have an unfair competitive advantage that could enable them, for example, to use Oakiwear's own data and analysis, to underprice Oakiwear's price quotations, and to better service and divert current and prospective customers. Further, the data would also show which rain boot patterns are most in demand, allowing a competitor to focus its manufacturing and inventory on the hottest patterns only.

34.    Oakiwear has spent, and continues to spend, significant amounts of time and money in developing, improving and protecting its confidential, proprietary, and trade secret information, and the tools used to access and utilize that data. The confidential, proprietary, and trade secret information has independent economic value in that it consists of information that is neither generally known nor readily



ascertainable within the industry through lawful means. Oakiwear has made reasonable efforts to ensure the secrecy of its confidential, proprietary, and trade secret information, and the confidential, proprietary, and trade secret information constitutes a trade secret that merits legal protection from unauthorized disclosure, misappropriation, dissemination, and/or use.

**II.    Brewer and Zimmerman Collaborate to Form Timbee to Misappropriate Oakiwear's Trade Secrets and to Divert Oakiwear Customers to Timbee While Both Were Employed by Oakiwear**

### A.    Brewer and Zimmerman Form Timbee

35.    Brewer and Zimmerman hatched a plan to form Timbee to compete with Oakiwear. In June or July 2016, Brewer purchased a laptop computer for Timbee. Brewer took steps to establish a website for Timbee at timbee.com by issuing payment for the domain name on August 9, 2016. Timbee was then registered with the Secretary of State on August 10, 2016. Brewer placed an order with a manufacturer for samples for Timbee on August 19, 2016. He subsequently placed a large order for Timbee on September 29, 2016. Brewer paid a photographer for Timbee on November 25, 2016.

36.    Brewer and Zimmerman took these steps while still employed by Oakiwear. Brewer was also still the manager of the LLC. Neither Brewer nor Zimmerman informed Dustin or Oakiwear they were forming a competing company and planning on stealing Oakiwear's trade secrets and confidential information for Timbee's own use.

### B.    Brewer Implemented New Manufacturing Processes for Timbee

37.    In early 2016, Dustin asked Brewer to identify and request samples from additional boot manufacturers that were capable of applying a "flacking process" to reduce tariffs, as U.S. Customs did not classify boots that went through this process as "rubber" boots. If the boots went through the flacking process, then Oakiwear might



have been able to avoid paying significant tariffs on its imports, saving as much as 10-20% on the import tariffs.

38.    Expanding Oakiwear's relationships with manufacturers also provided several other opportunities. Relationships with additional manufacturers provided redundancy if an existing manufacturer failed to perform. With the additional resources, it potentially allowed Oakiwear the opportunity to negotiate for better pricing. Finally, finding other manufacturers provided Oakiwear the opportunity to improve products or replace a current manufacturer.

39.    Brewer identified a new manufacturer that could apply the flacking process to the rain boots. Dustin instructed Brewer to order samples for review. Brewer delayed ordering the samples. When he eventually ordered the samples, he did so through a private FedEx account instead of using Oakiwear's corporate account. It appears Brewer was taking steps to conceal Timbee's activities. Due to Brewer's delays, Oakiwear never placed an order with the new manufacturer.

40.    Brewer later admitted to Dustin that he ordered boots for Timbee with the "flacking" process applied to reduce tariffs. The order arrived in February, which means Brewer had placed the order while he was still the general manager of Oakiwear. This was the second order Brewer had placed for Timbee with this new manufacturer. Further, Brewer ordered boots in Oakiwear's patterns it had identified as that seasons' top sellers or strong potential sellers in its market data.

C.    **Zimmerman Leaves Oakiwear in December 2016, after Deleting Emails and Diverting Sales to Timbee**

41.    Oakiwear used "Gmail" for its email communications. Each employee was assigned a separate Gmail account that they were to use for business purposes. The employees understood that the email messages belonged to Oakiwear.

COMPLAINT - 11
Case No. 3:17-cv-5202
OAKW01-000001- 2050533.doc

L A N D E R H O L M

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

42.    On November 11, 2016, many of Zimmerman's emails were deleted, including from the "trash" folder, from her company Gmail account (a cloud based email provider). Gmail records obtained by Oakiwear indicated her emails were deleted from a Macintosh computer. Brewer was the only person working at Oakiwear who used a Macintosh computer.

43.    Zimmerman's email activity, following the November 11, 2016 mass email deletion, was extremely limited. As a salesperson, Zimmerman was expected to regularly engage with existing clients, potential clients, and other potential leads, especially during the winter months which was Oakiwear's peak season. However, Zimmerman did not actively initiate contact with new clients during the period between when her emails were deleted and her last day of work with Oakiwear on December 8, 2016.

44.    Zimmerman, while employed by Oakiwear, began meeting Oakiwear's clients and attempted to divert sales to Timbee. For example, on one Oakiwear wholesale account, Zimmerman was contacted by a client who wanted to place a large order of rain boots, raincoats, and umbrellas. Zimmerman responded to the client on November 16, 2016, to confirm whether she wanted to place her order. The client confirmed, and a sales order was created in the amount of $4,223.95. That order never shipped.

45.    On January 31, 2017, after Zimmerman quit Oakiwear, the client contacted Oakiwear to inquire about the order. The client was upset because the order had not yet been received, and just recently, Zimmerman had contacted the client and attempted to convince her to place the same order through Timbee. Oakiwear was able to fulfill the order in February 2017 and salvage that particular customer. Oakiwear believes Zimmerman likely attempted the same stunt with other clients: she failed to put

L A N D E R H O L M

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

through an order, and then contacted that client after she had departed Oakiwear to have them place their order through Timbee instead.

46.    Zimmerman's last day with Oakiwear was December 8, 2016. Brewer paid Zimmerman for that entire month and also paid her commissions on sales that had not been finalized, both in direct violation with Oakiwear's policy. Moreover, Zimmerman failed to turn over her sales pipeline and leads prior to her departure from Oakiwear. Zimmerman developed this sales pipeline at substantial expense to Oakiwear. Zimmerman subsequently used Oakiwear's sales pipeline and leads to obtain business for Timbee.

### D.    Brewer and Zimmerman Take Oakiwear's Trade Secrets and Confidential and Proprietary Information

47.    Unbeknownst to Oakiwear, and prior to their resignations, Brewer and Zimmerman began to loot the Company's confidential, proprietary, and trade secret documents and information, as well as other property and information belonging to Oakiwear. Brewer and Zimmerman did this by sending emails containing Oakiwear's trade secret reports and other information, surreptitiously, from their Company email accounts to their personal email accounts. In an attempt to conceal their unlawful conduct, Brewer then deleted these emails from their Oakiwear accounts. This conduct by Brewer and Zimmerman was improper and unlawful, and was an attempt to steal Oakiwear's information and to conceal their conduct in order to provide an unlawful competitive advantage to Brewer, Zimmerman, and Timbee.

48.    Brewer and Zimmerman took and misappropriated Oakiwear's trade secret information by unlawful and improper means, as alleged above, and without Oakiwear's consent. On information and belief, Brewer and Zimmerman have used, and intend to continue to use, Oakiwear's trade secret information they took to compete unfairly with Oakiwear.

COMPLAINT - 13
Case No. 3:17-cv-5202
OAKW01-000001- 2050533.doc

LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

49. For example, Oakiwear worked in 2016 to develop a relationship with a national retailer of children's products. This retailer was interested in supplying Oakiwear's products to its locations nationwide, and it extended an invitation to Oakiwear to its invitation-only event in February 2017. Brewer obstructed attempts of Oakiwear's sales staff to ensure Oakiwear's presence at the February event. Instead, Brewer and Zimmerman used Oakiwear's confidential and proprietary information to secure Timbee's presence at the event and sell Timbee products to this retailer. Timbee announced its relationship with this retailer while Brewer was still employed by Oakiwear.

50. Brewer used his status as general manager to gain full access to extensive Oakiwear confidential and proprietary information, downloading large amounts of password-protected, competitively sensitive, and highly valuable trade secret material. Brewer then relayed this stolen data to Zimmerman to allow Timbee to divert business unlawfully from Oakiwear.

51. During the period from June or July 2016 through December 6, 2016 and February 21, 2017, while Brewer and Zimmerman were employed by Oakiwear, and Brewer was a manager of the LLC, Brewer and Zimmerman worked actively against Oakiwear's interests.

52. As a direct result of Defendants' conduct, Oakiwear is informed and believes it has lost a substantial amount in business and orders, had to reduce its sales and/or profits to retain customers, had its customers improperly diverted to Timbee, suffered damage to its good will with customers, and lost customers due to Defendants' improper conduct. In addition, Oakiwear faces further future losses of customers and good will as a result of Defendants' improper and unlawful conduct. Further, Oakiwear has had to incur costs and retain counsel to investigate and remedy Defendants' conduct.

COMPLAINT - 14
Case No. 3:17-cv-5202
OAKW01-000001- 2050533.doc



LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

53.     Brewer's and Zimmerman's breaches and violations of law and duty, as alleged herein, have damaged and will damage Oakiwear in that they harm and tend to harm Oakiwear by damaging Oakiwear's business, good will, interfering with its customer and vendor relationships, and resulting in diversion and loss of sales and customers. Oakiwear has suffered, and will continue to suffer, lost sales, loss in the value of its relationships, and will be forced to incur attorneys' fees and other costs to protect its interests. Oakiwear's good will with customers has been damaged and interfered with and its reputation harmed.

54.     Defendants' actions reflect their blatant disregard for their legal obligations and evidences intent to continue with these violations.

## FIRST CAUSE OF ACTION
### Misappropriation of Trade Secrets Under the Defend Trade Secrets Act
### (18 U.S.C. § 1836, et seq.)
### (Against All Defendants)

55.     Oakiwear repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

56.     Oakiwear owned and possessed certain confidential, proprietary and trade secret information, as alleged above.

57.     This confidential, proprietary, and trade secret information relates to products and services used, sold, shipped and ordered in, or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce.

58.     Oakiwear has taken reasonable measures to keep such information secret and confidential.

59.     This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.



LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

60.    In violation of Oakiwear's rights, Brewer and Zimmerman misappropriated the confidential, proprietary, and trade secret information in the improper and unlawful manner as alleged herein.

61.    Brewer and Zimmerman's misappropriation of the confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

62.    Brewer, Zimmerman, and Timbee failed to return Oakiwear's confidential and trade secret information, and attempted to conceal their theft of such information. Brewer and Zimmerman utilized for their own benefit, and for the benefit of Oakiwear's competitor, Oakiwear's confidential and trade secret information, and attempted to conceal their theft and use of such information. On information and belief, if Brewer and Zimmerman's conduct is not remedied, and if Brewer, Zimmerman, and Timbee are not enjoined, the Defendants will continue to misappropriate, disclose, and use for their own and for Timbee's benefit, and to Oakiwear's detriment, Oakiwear's confidential, proprietary and trade secret information.

63.    As the direct and proximate result of Defendants' conduct, Oakiwear has suffered and, if the Defendants' conduct is not stopped, will continue to suffer, irreparable injury as well as significant damages in an amount to be proven at trial.

64.    Because Oakiwear's remedy at law is inadequate, Oakiwear seeks, in addition to its damages, temporary, preliminary, and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests. Oakiwear's business is reliant on its trade secret materials, business reputation, and its ability to maintain and grow its client base in a competitive market and will continue suffering irreparable harm absent injunctive relief.

COMPLAINT - 16
Case No. 3:17-cv-5202
OAKW01-000001- 2050533.doc

LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

65. Oakiwear will likely succeed on the merits because of Defendants' blatant, willful, and malicious misappropriation of Oakiwear's trade secrets and other property, through the improper and unlawful methods, as alleged herein.

66. Oakiwear has been damaged by the foregoing, and is entitled to injunctive relief and its damages, in an amount to be determined at trial, as well as an award of exemplary damages and attorney's fees.

## SECOND CAUSE OF ACTION
### Violation of Trade Secrets under the Washington Uniform Trade Secrets Act
### (Against All Defendants)

67. Oakiwear repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

68. Oakiwear owned and possessed confidential and proprietary documents and data containing trade secrets, including, but not limited to, customer lists, inventories with pricing and product information, analyses and information, all as alleged herein.

69. Oakiwear made reasonable efforts to keep secret the information contained in these confidential and proprietary documents, by, among others, limiting access to confidential information and limiting computerized access.

70. Oakiwear's trade secrets contained in the documents and data alleged herein, derive independent economic value, both actual and potential, from not being generally known to other persons, businesses, or the public, who could obtain economic value from their disclosure or use.

71. In violation of Oakiwear's rights at law and by contract, Brewer and Zimmerman misappropriated the trade secret data, documents, and information described herein by secretly emailing key documents to themselves, by downloading and then sending to Defendant Timbee, Oakiwear's confidential documents and



information, and thereafter, by exporting confidential documents and information, and by taking the other actions alleged herein. Defendant Timbee knowingly and intentionally misappropriated by receiving and utilizing this material and participated in Brewer's and Zimmerman's misappropriation as aforesaid.

72.     As the direct and proximate result of Defendants' misappropriation as aforesaid, Oakiwear has suffered and, if Defendants' conduct is not enjoined, will continue to suffer irreparable injury, as well as damages in an amount to be determined at trial.

73.     Because Oakiwear's remedy at law is inadequate, Oakiwear seeks, in addition to its damages, temporary, preliminary, and permanent injunctive relief to recover and protect its trade secrets and other legitimate business interests.

74.     Oakiwear will likely succeed the merits because of Defendants' blatant misappropriation of trade secrets as set forth herein.

75.     Defendants' acts were malicious, fraudulent, and oppressive, and were done with conscious disregard of Oakiwear's rights, all within the meaning of RCW 19.108, in that Defendants misappropriated Oakiwear's trade secret information intentionally and knowingly and with a deliberate intent to benefit themselves and injure Oakiwear's business. Oakiwear is entitled to its damages, in an amount to be determined at trial, as well as injunctive relief, and an award of punitive damages and/or treble damages and attorney's fees pursuant to RCW 19.108.040.

### THIRD CAUSE OF ACTION
### Breach of Fiduciary Duty and Duty of Loyalty
### (Against Brewer and Zimmerman)

76.     Oakiwear repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.



LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

77.     As employees of Oakiwear, Brewer and Zimmerman owed Oakiwear their undivided loyalty and were obligated to act with the utmost good faith, and in the best interests of Oakiwear.

78.     Oakiwear was entitled to place its trust and confidence in Brewer and Zimmerman and to expect them to act with the utmost good faith toward it in carrying out the business of Oakiwear. Brewer further owed Oakiwear a duty of loyalty and duty of care as a manager of Oakiwear pursuant to the Washington limited liability company act, RCW 25.15.038.

79.     Oakiwear relied on Brewer's and Zimmerman's loyalty and integrity and their faithful performance of their duties and responsibilities.

80.     Brewer and Zimmerman took advantage of Oakiwear's faith by not performing their duties to Oakiwear, by acting in conflict of interest, by engaging in business for their own account and for Oakiwear's competitor, Timbee, and in competition with Oakiwear, all while employed by Oakiwear, and by deceiving Oakiwear and concealing their improper conduct.

81.     Brewer and Zimmerman knowingly and willfully breached their duty of loyalty to Oakiwear by scheming to deceive and defraud Oakiwear, by misappropriating and stealing Oakiwear's confidential and trade secret information and other property, by attempting to divert customers and vendors to Timbee, by soliciting Oakiwear's customers on their own behalf and on behalf of Timbee while employed by Oakiwear, and diverting and misappropriating Oakiwear's trade secrets, confidential and proprietary business information, and customers.

82.     Zimmerman acted in a manner inconsistent with her agency and trust by soliciting Oakiwear's customers on her own behalf, and on behalf of Timbee, and by diverting and misappropriating Oakiwear's sales, profits and property; Defendant



Brewer acted on his own and on Timbee's behalf, and against Oakiwear's interests, while employed by and acting as manager of Oakiwear.

83.    As a direct and proximate result of Brewer's and Zimmerman's disloyalty to Oakiwear and breach of their duties, Oakiwear has been and is being harmed. Oakiwear is entitled to its damages, in an amount to be determined at trial, as well as disgorgement from the Defendants, and the forfeiture and return of, all monies and compensation paid to Brewer and Zimmerman during their period of disloyalty, the exact amount to be determined at trial. Oakiwear is further entitled to injunctive relief against Brewer and Zimmerman and all those acting in concert or participation with them, remedying their past improper conduct, and preventing such conduct in the future.

84.    Brewer and Zimmerman are, on information and belief, still in possession of Oakiwear's confidential and trade secret information, and, on information and belief, is able to access and use this information on behalf of Timbee.

85.    As a direct and proximate result of Brewer's and Zimmerman's breach of their duty of loyalty, Oakiwear has been irreparably injured, and has suffered damages in an amount to be determined at trial. Because its remedy at law is inadequate, Oakiwear seeks, in addition to its damages, preliminary and permanent injunctive relief, enjoining Brewer and Zimmerman, and all those acting in concert or participation with them, from further improper conduct, and from dealing with the customers whose confidential information they misappropriated, and further remedying the improper conduct as alleged above.

**FOURTH CAUSE OF ACTION**
**Tortious Interference with Business Expectancy**
**(Against Brewer and Zimmerman)**

86.    Oakiwear repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

COMPLAINT - 20
Case No. 3:17-cv-5202
OAKW01-000001- 2050533.doc

LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

87.     Oakiwear had a reasonable business expectancy and ongoing relationships with its customers. Oakiwear had a reasonable expectation in engaging in business with, and in earning profits in connection with sales to, (a) its existing customers with whom Brewer and Zimmerman dealt, (b) new customers with whom Brewer and Zimmerman dealt while employed by Oakiwear, and (c) customers who were involved in negotiations and discussions with Oakiwear and/or with Brewer and Zimmerman while they were employed by Oakiwear.

88.     Brewer and Zimmerman knew of Oakiwear's business relationship and business expectancy from its customers.

89.     Brewer and Zimmerman intentionally, and in violation of their duties with Oakiwear, interfered with that expectancy by diverting existing and prospective accounts, and by other improper means. Brewer and Zimmerman engaged in this diversion through fraudulent and deceitful conduct, such as that alleged herein, and other conduct that may be discovered.

90.     As a direct and proximate result of Defendants' improper conduct, Oakiwear has suffered damages including lost profits, the exact amount to be determined at trial.

### FIFTH CAUSE OF ACTION
### Conversion
### (Against Brewer and Zimmerman)

91.     Oakiwear repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

92.     Oakiwear owned and possessed reports, inventory lists, customer account lists, purchase history logs and other spreadsheets, pdfs and documents, both in physical and electronic form, that were contained and stored on Oakiwear's password protected computers. These documents were the exclusive property of Oakiwear.

LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

93.    Brewer and Zimmerman intentionally and substantially accessed, interfered, and took possession of Oakiwear's property by converting, stealing, and taking Oakiwear reports, inventory lists, customer account lists, purchase history logs, and other spreadsheets, pdfs or documents, without Oakiwear's knowledge or consent. On information and belief, Brewer and Zimmerman, while still employed by Oakiwear, then transferred these documents to Timbee.

94.    As a direct and proximate result of Brewer's and Zimmerman's conduct, Oakiwear suffered and continues to suffer damages including, but not limited to, the costs of investigating the Defendants' conduct, the costs of conducting a damage assessment, the costs and reputational harm associated with notifying customers of Brewer's and Zimmerman's conduct, and the cost of taking corrective action based on Brewer's and Zimmerman's conduct, such amounts to be determined at trial.

### SIXTH CAUSE OF ACTION
### Civil Conspiracy
### (Against All Defendants)

95.    Oakiwear repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

96.    Brewer, Zimmerman, and Timbee intentionally and knowingly agreed to and did, aid, abet, give assistance to, and conspire with each other, in Brewer's and Zimmerman's violations of duty to Oakiwear and other tortious conduct. The Defendants undertook acts in furtherance of the common design and scheme, by *inter alia*, attending meetings and actively participating in them in an attempt to poach and solicit existing Oakiwear customers.

97.    As a direct and proximate result of Defendants' conduct, Oakiwear suffered and continues to suffer damages including, but not limited to, the costs of investigating Defendants' conduct, the costs of conducting a damage assessment, the

LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

costs and reputational harm associated with notifying customers of Defendants' conduct, and the cost of taking corrective action based on Defendants' conduct, such amounts to be determined at trial.

## JURY DEMAND

98.    Plaintiff seeks a trial by jury of all issues so triable.

WHEREFORE, Oakiwear Outdoor LLC respectfully demands judgment in its favor and against Defendants as follows:

A.    Awarding damages as described in each of the above claims, in favor of Oakiwear and against Defendants, jointly and severally, in amounts to be determined at trial, and further directing forfeiture and disgorgement of all amounts paid by Oakiwear to Defendants Brewer and Zimmerman during the period of disloyalty.

B.    Granting a temporary and permanent injunction against Defendants, enjoining them from violating their legal duties to Oakiwear, from soliciting or accepting business from Oakiwear's customers whose data Brewer and Zimmerman took, or whom they solicited for Timbee while employed by Oakiwear, and from using Oakiwear's confidential and proprietary information, and directing return of all of Oakiwear's property.

C.    Awarding exemplary damages in favor of Oakiwear and against Defendants, jointly and severally, in an amount to be determined at trial.

D.    Awarding Oakiwear pre-judgment and post-judgment interest, and its attorneys' fees, costs and other expenses incurred in this action;

/ / /

/ / /

/ / /

/ / /

/ / /

L A N D E R H O L M

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

1    E.    Granting Oakiwear such other and further relief as this Court deems just

2  and proper.

3    DATED this 16th day of March, 2017.

4    LANDERHOLM, P.S.

5

6    /s/ Phillip Haberthur
     BRADLEY W. ANDERSEN, WSBA #20640
     PHILLIP J. HABERTHUR, WSBA #38038
7    Of Attorneys for Plaintiff,
     Oakiwear Outdoor LLC
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies as follows:

1.      My name is Heather A. Dumont. I am a citizen of the United States, over the age of eighteen (18) years, a resident of the State of Washington, and am not a party of this action.

2.      On the 16th day of March, 2017, I caused to be served the foregoing **COMPLAINT** by electronic notice through the court's ECF system, upon the following parties:

> Jesse D. Conway
> The Law Office of Jesse D. Conway, PLLC
> 1014 Franklin St Ste 106
> Vancouver, WA  98660-3040
> E-mail: jesse@conwaylaw.net

**I CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF WASHINGTON AND UNDER PENALTY OF PERJURY UNDER 28 USC SECTION 1746, THAT THE FOREGOING IS TRUE AND CORRECT.**

DATED:  March 16, 2017

At:  Vancouver, Washington


*/s/ Heather Dumont*
HEATHER A. DUMONT

COMPLAINT - 25
Case No. 3:17-cv-5202
OAKW01-000001- 2050533.doc

**L A N D E R H O L M**

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122